# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BATTLE BORN MUNITIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 18-1418 |
| | ) Judge Nora Barry Fischer |
| DICK'S SPORTING GOODS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

I. INTRODUCTION

In this commercial litigation, Plaintiff Battle Born Munitions ("Battle Born") brings breach of contract and torts claims against Defendant Dick's Sporting Goods ("Dick's") related to alleged delays by Dick's in taking delivery of and paying for custom-made branded ammunition manufactured by Battle Born which purportedly resulted in its loss of a significant business opportunity brokering the sale of helicopters to Lebanon. (Docket No. 22). Presently before the Court is Dick's motion to dismiss and strike, its brief in support, Battle Born's briefs in opposition, and Dick's reply. (*See* Docket Nos. 26-27; 31-32; 34). After careful consideration of the parties' arguments, and for the following reasons, Dick's motion to dismiss [26] is granted and its motion to strike [26] is denied.

II. BACKGROUND

*A. Contractual Relationship Between the Parties*

Battle Born is a licensed international broker involved in the sale of ammunition based in Nevada. (Docket No. 22 at ¶ 1). Dick's is a sporting goods retailer based in the Western District

of Pennsylvania. (*Id*. at ¶ 3). On January 5, 2016, the parties entered into an agreement ("Vendor Agreement") providing for Battle Born's sale of custom ammunition to Dick's, branded as "Field and Stream," a trademark owned by a Dick's subsidiary, American Sports Licensing, LLC. (*Id.* at ¶¶ 1, 6, 8, 25; Ex. "A"). The essential disputes surround Battle Born's allegations that Dick's agreed to take delivery of the custom branded ammunition by November 16, 2016 but refused delivery on December 1, 2016 and delayed its acceptance of the ammunition until August of 2017. (Docket No. 22 at ¶¶ 6, 10). While Dick's ultimately paid for the ammunition, by delaying acceptance of the delivery, it was able to defer making any payments as well. (*Id*.). In the interim, Battle Born paid its suppliers nearly $4.5 million for the ammunition and missed out on a potentially lucrative business opportunity with a third party which it could not fund without the profits it expected from its dealings with Dick's. (*Id*. at ¶ 9).

### B. Vendor Agreement and POs

The Vendor Agreement governs the parties' relationship and sets forth basic terms and conditions of the parties' agreement which are also applicable to all subsequently issued Purchase Orders, ("POs"). (Docket No. 25 at ¶ 24). Among other things, the POs issued by Dick's to Battle Born ordering ammunition were to specify the pricing terms:

> 2. Price. The prices for products or services provided by Vendor shall be the prices specified in the purchase orders applicable to such products or services or, in certain instances, specified in a separate pricing or manufacturing agreement between Vendor and Dick's applicable to such products or services. All such pricing is subject to the terms this Vendor Agreement, including without limitation any discounts, allowances, or chargebacks.

(Docket No. 25 at ¶ 2). The payment terms set forth in the Vendor Agreement required Dick's to make payment for the ammunition within 60 days of delivery, (i.e., net 60 days), at the latest. (Docket Nos. 22 at ¶¶ 7, 35; 25). However, the Vendor Agreement allowed for a two percent

discount to be applied to payments made within 30 days of delivery, (i.e., 2%, net 30). (Docket Nos. 22 at ¶¶ 7, 12, 37; 25).

Some additional provisions are relevant to the instant disputes. (*See* Docket No. 25 at ¶¶ 19, 23). To this end, the Governing Law/Jurisdiction paragraph states:

> 23. Governing Law; Jurisdiction. This Vendor Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the principles of conflicts of laws. Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in Allegheny County, Pennsylvania, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper.

(Docket No. 25 at ¶ 23). The agreement also contains integration and no oral modification clauses:

> 24. Miscellaneous. The terms "Dick's" and "DSG," as used in the Vendor Agreement, shall include any affiliate of Dick's Sporting Goods, Inc., including any affiliate that is acquired through merger, acquisition, asset purchase or otherwise by Dick's. By executing this Vendor Agreement, Vendor agrees to all terms and conditions contained in this Vendor Agreement, the terms and conditions set forth in the VRG and as applicable, the drop ship addendum, which are specifically incorporated herein by reference, and that any changes or modifications to or waivers of such terms and conditions must be in writing and signed by both Dick's and Vendor. This Vendor Agreement supersedes all prior written and oral and all contemporaneous oral agreements and understandings with respect to the subject matter thereof and expressly excludes any of Vendor's terms and conditions of sale or any other document issued by Vendor in connection with this Vendor Agreement. The terms and conditions of this Vendor Agreement, including the terms and conditions set forth in the VRG, shall apply to all purchase orders and any terms in Vendor's invoices, billing statements or acknowledgement forms or in any other document or communication from Vendor that are inconsistent with or add to the terms of this Vendor Agreement shall be of no force or effect. This Vendor Agreement shall be effective for a period of one year from the Effective Date shown on the first page and shall renew

>           automatically for one year, and year to year thereafter unless
>           terminated in writing by either party upon thirty (30) days written
>           notice in any renewal term…

(Docket No. 25, Ex. A. at ¶ 25). Finally, the Vendor Agreement has a limitation of damages provision, which states that:

> 19. Limitation of Damages. Except with respect to Vendor's confidentiality, recall and indemnification obligations and Dick's confidentiality obligations, in no event shall either party be liable for any punitive, special, incidental or consequential damages of any kind (including, but not limited to loss of profits, business revenues, business interruption and the like) arising from or relating to the relationship between Dick's and Vendor, including all prior dealings and agreements, or the conduct of business under or breach of this Vendor Agreement or any order, Dick's cancellation of any order or orders of the termination of business relations with Vendor, regardless of whether the claim under which such damages are sought is based upon breach of warranty, breach of contract, negligence, tort, strict liability, statute, regulation or any other legal theory or law, even if the affected party has been advised by the other party of the possibility of such damages. These limitations shall not apply to damages that result from a party's gross negligence, fraud or willful misconduct.

(*Id*. at ¶ 19).

### C. Issuance of POs

Battle Born alleges that on July 12, 2016 and August 8, 2016, Dick's "substantially increased" the amount of ammunition it was ordering through POs and continued to promise to take delivery in November 2016. (Docket No. 22 at ¶ 10). It contends that both parties agreed that a quick delivery schedule was essential due to the increase in capital outlays that Battle Born would be required to make to deliver the increased quantities set forth in Dick's POs. (*Id.*). On August 16, 2016, Battle Born claims that its principal, Fred Hees, confirmed the acceptance of the additional POs with a Dick's representative and again stressed the importance that Dick's take immediate delivery. (*Id.*). Battle Born further asserts that Dick's employees, Scott Hellbus and

Ed Eckman, expressed their intention to take delivery in November 2016. (*Id.*). Battle Born alleges that Dick's knew that it would not take delivery of the ammunition as promised for two primary reasons: (1) Dick's was able to increase its stock price by reducing its day of sales inventory reported to shareholders by having third parties warehouse the custom-branded inventory for a lengthy period of time; and, (2) Dick's manipulated the marketplace for ammunition by tying up potential suppliers to produce the custom-branded inventory which could only be sold to Dick's, thereby leading to increased sales and profits. (*Id*. at ¶¶ 22-29).

    D. *Alleged Incurred Costs*

Battle Born complains that Dick's breached their agreement in various ways and caused it to incur unnecessary costs and lost profits. In this regard, Battle Born avers that Dick's often improperly took the 2% discount when payment was made more than 30 days after the due date, resulting in a purported financial loss of $108,462 in underpayments for inventory delivered in 2016 and 2017. (Docket No. 22 at ¶ 12). Battle Born further argues that Dick's wrongly deducted chargebacks from Battle Born invoices for inventory delivered in 2016 and 2017, allegedly causing additional losses of $14,608. (*Id.* at ¶ 13). Battle Born next maintains that Dick's failure to take delivery in November 2016 resulted in its inability to timely recoup an anticipated $3,071,910 in cash from the sale of the ammunition and also caused it to incur warehousing and insurance costs of $45,125 and an additional $32,743 for product liability insurance. (Docket No. 22 at ¶¶ 11, 14-15). Finally, Battle Born alleges that it lost a purchase order with the Government of Lebanon to broker a deal involving 12 Bell 407 GXP helicopters, and claims to have sustained $5,224,000 in lost profits on the helicopter transaction as a result of Dick's misrepresentations. (*Id*. at ¶¶ 17-20).

    E. *Relevant Procedural History*

Battle Born initiated this action by filing its Complaint on October 23, 2018. (Docket No. 1). After an initial round of motions practice, on December 21, 2018, the Court entered an Order denying Dick's Motion to Dismiss and Motion to Strike, without prejudice, and further ordered Battle Born to file an Amended Complaint. (*Id.*). Battle Born filed its First Amended Complaint on January 10, 2019. (Docket No. 22). Thereafter, Dick's filed a Motion to Dismiss and a Motion to Strike and its Brief in Support. (Docket Nos. 26, 27). Battle Born countered with its Responses to such Motions on February 18, 2019. (Docket Nos. 31, 32). Dick's submitted its Reply on March 4, 2019. (Docket No. 34). No further briefing has been requested by the parties and the Court does not believe that oral argument is necessary as to this motion. As the motion is fully briefed, it is now ripe for disposition.

### III. LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Although the Court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v.*

*McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556–57.

Consistent with these principles, the Third Circuit Court of Appeals has prescribed a three-step analysis for purposes of determining whether a claim is plausible. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Second, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Third, the Court should assume the veracity of all well-pled factual allegations and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). This third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

IV. DISCUSSION

At the outset, the parties do not contest that Pennsylvania law governs all of Battle Born's claims in this action such that this Court need not engage in a choice of law analysis and will apply Pennsylvania law to evaluate the sufficiency of Battle Born's breach of contract; fraud and negligent misrepresentation claims. *See 84 Lumber Co., L.P. v. Bryan Const. Co.*, Civ. A. No. 2:09-1030, 2011 WL 666209, at *5 (W.D. Pa. Feb. 14, 2011) (citing *Schiavone Construction Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984)) ("In this case, the parties do not dispute that

Pennsylvania law applies to this case, and the Court need not engage in a choice of law analysis."). Dick's asserts several legal bases in support of its motion to dismiss Battle Born's tort claims including: the gist of the action doctrine; the economic loss doctrine; the parole evidence rule; and failure to sufficiently plead the elements of such causes of action. (Docket Nos. 27; 34). Dick's further maintains that Battle Born's breach of contract claim should be partially dismissed to the extent that it seeks incidental, consequential or lost profits damages and moves to strike impertinent allegations set forth in Battle Born's First Amended Complaint. (*Id.*). Battle Born responds that its tort and contract claims have been sufficiently pled and that the legal defenses asserted by Dick's should not result in dismissal at this stage of the litigation. (Docket No. 31). Having carefully considered the parties' arguments, the Court agrees with Dick's that Battle Born's tort claims and its requests for incidental, consequential and lost profits damages on its breach of contract claim are subject to dismissal and will deny the motion to strike, as moot. The Court's analysis follows, starting with Battle Born's tort claims.

    *A. Tort Claims*

The Court turns initially to Dick's invocation of the gist of the action and economic loss doctrines as defenses to the tort claims. (Docket No. 27). Dick's seeks dismissal of Battle Born's fraud and negligent misrepresentation claims under the gist of the action and economic loss doctrines because those claims result from Dick's alleged breach of duties to accept delivery of the ammunition from Battle Born by November 2016 and pay for it within 30 or 60 days, as is set forth in the Vendor Agreement and POs. (*Id.*). Battle Born responds that these doctrines are inapplicable and further contends that the gist of the action doctrine does not preclude its claims for fraudulent inducement and its negligent misrepresentation claims should avoid dismissal under the *Bilt-Rite* exception to the economic loss doctrine. (Docket No. 31). Dick's replies that Battle

Born's fraudulent inducement theory fails under the parol evidence rule because the parties' agreements were fully integrated and that *Bilt-Rite* has no application to the facts of this case. (Docket No. 34). As noted above, the Court agrees with Dick's position that the claims are subject to dismissal under the gist of the action and economic loss doctrines.

Under Pennsylvania law, the gist of the action and economic loss doctrines are "designed to maintain the conceptual distinction between breach of contract claims and tort claims." *KBZ Commc'ns Inc. v. CBE Techs. LLC*, 634 F. App'x 908, 910-11 (3d Cir. 2015) (citing *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). The most recent decisions by the Supreme Court of Pennsylvania analyzing these legal doctrines generally recognize that parties to a contract may be subject to liability for tortious conduct which occurred during the pendency of the contract but preclude tort liability for a party's breach of the duties covered by the parties' contractual agreement. *See e.g.*, *Bruno v. Erie Ins. Co.* 630 Pa. 79, 112, 106 A.3d 48, 68 (2014) (gist of the action doctrine); *Dittman v. UPMC*, 196 A.3d 1036, 1054 (Pa. 2018) (economic loss doctrine). To this end, in *Bruno v. v. Erie Ins. Co.*, the Supreme Court held the following regarding the gist of the action doctrine:

> [i]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

630 Pa. 79, 112, 106 A.3d 48, 68 (2014) (citations omitted). As this Court has stated following *Bruno*, "[t]he [gist of the action] doctrine seeks to prevent plaintiffs from repackaging breach of contract claims as tort claims," and "courts must look at where the duty allegedly breached

originates." *EQT Production Co. v. Terra Serv., LLC*, 179 F. Supp. 3d 486, 494 (W.D. Pa. Apr. 12, 2016) (citation omitted). Similarly, in *Dittman v. UPMC*, the Supreme Court held that the applicability of the economic-loss doctrine turns on whether the duty at issue "arises independently of any contractual duties between the parties." 196 A.3d 1036, 1054 (Pa. 2018) (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding*, Inc., 463 S.E.2d 85, 88 (S.C. 1995)). "Specifically, if the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action." *Id*. Stated another way, "[t]he economic loss doctrine does not preclude all negligence claims seeking solely economic damages, but continues to preclude actions where the duty arises under a contract between the parties." *Gernhart v. Specialized Loan Servicing LLC*, No. CV 18-2296, 2019 WL 1255053, at *4 (E.D. Pa. Mar. 18, 2019) (citing *Dittman*, *supra*).

In this Court's estimation, Battle Born's fraudulent inducement and negligent misrepresentation claims are subject to dismissal under the gist of the action and economic loss doctrines because the duties it claims Dick's breached through its alleged misrepresentations, i.e., to accept delivery of the custom-branded ammunition by November 2016 and pay for same within 30-60 days of delivery, were created by the express terms of the parties' contracts. Indeed, Battle Born specifically pleads all of the following allegations in support of its breach of contract claim:

> 34. The parties entered into a Vendor Agreement, which provides basic terms for the sale pursuant to Purchase Orders for Field and Stream branded ammunition.
> 35. Dick's submitted Purchase Orders to BBM for house branded ammunition and agreed that it would take delivery of the goods no later than November 2016, and would pay for the goods net 60 days, at the latest.
> 36. Dick's breached the Vendor Agreement by failing to take delivery of the goods in November 2016, as agreed.

(Docket No. 22 at ¶¶ 34-36). Battle Born then expressly incorporates all of these factual allegations into its fraudulent inducement, negligent misrepresentation and *Bilt-Rite* claims. (*See* Docket No. 22 at ¶¶ 41 ("BBM repeats and realleges paragraphs 1 through 40 as though fully set forth herein and based on those incorporated paragraphs to fully support this Count II"); 49 ("BBM repeats and realleges paragraphs 1 through 48 as though fully set forth herein and based on those incorporated paragraphs to fully support this Count III"); 55 ("BBM repeats and realleges paragraphs 1 through 54 as though fully set forth herein and based on those incorporated paragraphs to fully support this Count IV")). Hence, Battle Born admits that the duties that Dick's accept delivery of the custom-branded ammunition and pay for it were created by their contracts and do not arise independently of the contracts. *See Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) ("'Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them.'") (quoting *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995)).

Further, Battle Born's attempt to sustain its claim in reliance upon its alleged market manipulation and daily sales inventory theories are unpersuasive as they merely provide purported reasons why Dick's delayed accepting delivery, ignoring the fact that the contract itself created the rights it seeks to enforce in the first instance, i.e., that Dick's accept delivery of ammunition ordered under POs and payments were due within 60 days of delivery. (*See e.g.*, Docket No. 22 at ¶¶ 21-28); *cf. Bruno*, 630 Pa. at 112 ("If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract."). To the extent that Battle Born seeks relief for alleged breaches of these contractual duties during the performance of the

contracts, Battle Born has failed to state a plausible claim for relief and its claims for fraudulent inducement and negligent misrepresentation must be dismissed. *See e.g., KBZ Commc'ns Inc.*, 634 F. App'x at 910-11 (gist of the action doctrine bars claims alleging fraud in the performance of the contract); *Fleming Steel Co. v. Jacobs Engineering Group, Inc.*, --- F. Supp. 3d ----, 2019 WL 1227108 (W.D. Pa. Mar. 15, 2019) (economic loss doctrine bars claim alleging negligent misrepresentation).

Battle Born attempts to avoid the application of these doctrines, arguing that: fraudulent inducement claims are not generally barred by the gist of the action doctrine; and its negligent misrepresentation claim relies upon *Bilt-Rite* and § 552(1) of the Restatement (Second) of Torts. (Docket No. 31). Dick's counters that neither theory saves the claims from dismissal. (Docket No. 34). After reviewing these arguments, Battle Born has not persuaded the Court that its claims are viable for several reasons.

First, Battle Born has not sufficiently alleged a fraudulent inducement claim against Dick's arising from the Vendor Agreement because all of the alleged misrepresentations about when the ammunition was to be delivered post-date the January 5, 2016 effective date of the Vendor Agreement, such that the claim is subject to dismissal. (*See* Docket No. 22). As this Court has held, "'[f]raud in the inducement,' which is one theory of 'fraudulent misrepresentation,' applies when a plaintiff contends that representations were fraudulently made and that, 'but for them,' he would never have entered into the agreement." *Waldschmidt v. NVR, Inc.*, Civ. A. No. 18-1372, 2018 WL 6433910, at *8 (W.D. Pa. Dec. 7, 2018) (citing *Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002); *1726 Cherry St. P'ship by 1726 Cherry St. Corp. v. Bell Atl. Properties, Inc.*, 653 A.2d 663, 666 (Pa. Super. Ct. 1995)). The Court of Appeals has specifically noted that one cannot be fraudulently induced to enter into an agreement by misrepresentations made after

the formation of the contract. *See KBZ Commc'ns Inc.*, 634 F. App'x at 912 ("For one, KBZ cannot claim that any alleged fraud by the Individual Defendants induced it to enter into the Dealer Agreement in April 2008, since none of the allegations about the conduct of the Individual Defendants pre-dates that time. Although KBZ has done its best to simply recast its claim as 'fraud in the inducement' rather than 'fraud in the performance' of the contract, the date of contract formation is before all of the supposedly fraudulent conduct alleged in the Complaint."). Here, Battle Born alleges that the representations made by Dick's employees concerning the delivery date took place in July and August of 2016 or several months after the Vendor Agreement was formed. (*See* Docket No. 22 at ¶ 10). Therefore, Battle Born has failed to state a plausible fraudulent inducement claim against Dick's as to the Vendor Agreement.

Second, even if Battle Born's First Amended Complaint sufficiently alleged that Dick's fraudulently induced it into entering into the Vendor Agreement or any applicable POs, which it has not, any such claim would be barred by the parol evidence rule because the agreement between the parties is fully integrated. To this end,

> [f]raud in the inducement claims […] are ordinarily barred when the contract at issue is fully integrated. *Toy v. Metro. Life Ins. Co.*, 593 Pa. 20, 49, 928 A.2d 186, 205 (2007); *HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1280 (Pa. 1995); *Hart*, 884 A.2d at 340; *Blumenstock*, 811 A.2d at 1036; *1726 Cherry St.*, 653 A.2d at 668. "The effect of an integration clause is to make the parol evidence rule particularly applicable. Thus, the written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract." *1726 Cherry St.*, 653 A.2d at 665 (1995). The rationale for barring such claims is that "a party cannot justifiably rely upon prior oral representations and then sign a contract containing terms that refute the alleged prior oral representations." *Hart*, 884 A.2d at 340 (internal citations and quotations omitted).

*Waldschmidt*, 2018 WL 6433910, at *8.  Here, § 25 clearly states that "[t]his Vendor Agreement supersedes all prior written and oral and all contemporaneous oral agreements and understandings with respect to the subject matter thereof and expressly excludes any of Vendor's terms and conditions of sale or any other document issued by Vendor in connection with this Vendor Agreement." (Docket No. 25 at § 25).  Thus, insofar as Battle Born contends that Dick's employees misrepresented that it would accept delivery by a date certain not specified in the Vendor Agreement nor the PO's, any such claim is barred by the parol evidence rule.  *Waldschmidt*, 2018 WL 6433910, at *8-9 ("The effect of the integration clause is dispositive. This Court cannot consider prior or contemporaneous representations regarding a matter covered by the Purchase Agreement.").  In addition, § 25 of the Vendor Agreement further provides that any modifications to the terms and conditions must be in a writing signed by both parties but there are no such fully executed amendments to their agreement.  *Id.*  Accordingly, Battle Born's fraudulent inducement claim is separately barred by the parol evidence rule and must be dismissed on this alternative basis. *Waldschmidt*, 2018 WL 6433910, at *8.

Third, the *Bilt-Rite* exception is inapplicable to the instant matter because Dick's is not in the business of providing information, as is required to sustain such a claim under § 552(1) of the Restatement (Second) of Torts.  To this end, numerous courts have recognized that *Bilt-Rite* does not apply in a situation involving the sale of goods or services between two sophisticated entities, as is the case here.  *See e.g., Jacobs*, 2019 WL 1227108, at *24-26; *Slippery Rock Area Sch. Dist. v. Tremco, Inc.*, Civ. A. No. 15-1020, 2016 WL 3198122, at *18 (W.D. Pa. June 9, 2016) ("defendants in this case were in the business of marketing and manufacturing its products and providing general contracting services. Any information provided by defendants to plaintiff was ancillary to the sale of defendants' products.").  It is also evident that Dick's – which purchased

the ammunition – was not in the business of selling information to Battle Born sufficient to bring the case within the *Bilt-Rite* exception. *See id.*; *see also Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, 700 F.Supp.2d 720, 735 (W.D. Pa. 2010) ("[I]t is abundantly clear from all the pleadings filed to date that Partners was not in the business of supplying information, but rather in the business of roasting and selling coffee."). Accordingly, Battle Born has failed to state a plausible claim for relief against Dick's for negligent misrepresentation under § 552(1) of the Restatement (Second) of Torts and *Bilt-Rite*.

For all of these reasons, Counts II, III and IV of Battle Born's First Amended Complaint are dismissed.

*B. Limitation of Damages*

Dick's next moves to partially dismiss Battle Born's request for incidental, consequential or lost profits damages on its breach of contract claim given the limitation of damages clause set forth in § 19 of the Vendor Agreement. (Docket Nos. 27; 34). Battle Born responds that the provision does not preclude such damages for fraud claims which it has asserted here. (Docket No. 31). Once again, the Court agrees with Dick's position and will grant its motion.

As a general matter, Pennsylvania courts generally enforce limitation of damages provisions between sophisticated entities engaged in commercial transactions. *See e.g., Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 262 (Pa. Super. Ct. 1997) (citations omitted) ("Under Pennsylvania law, clauses limiting damages in commercial settings are generally enforced."); *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 203 (3d Cir. 1995) (citations omitted) ("Limitation of liability clauses are routinely enforced under the Uniform Commercial Code when contained in sales contracts negotiated between sophisticated parties and when no personal injury or property damage is involved. This is true whether the damages are pled in contract or tort.");

*Fish Net, Inc. v. ProfitCenter Software, Inc.*, Civ. A. No. 09-5466, 2013 WL 5635992, at *10 (E.D. Pa. Oct. 15, 2013) (citations omitted) ("Limitation of liability provisions in sales contracts between merchants or experienced businesses are generally upheld because there is generally no disparity in the sophistication or bargaining power between the parties."). Section 19 of the Vendor Agreement provides that neither party would "be liable for any punitive, special, incidental, or consequential damages of any kind (including but not limited to loss of profits, business revenues, business interruption and the like), arising from or relating to the relationship between Dick's and [Battle Born], including … the conduct of business under or breach of this Vendor Agreement or any [purchase] order." (Docket No. 25 at § 19). Despite such language, Battle Born seeks "incidental damages and economic or consequential damages (lost future profits/opportunity)" as relief for its breach of contract claim. (Docket No. 22 at ¶ 40). The sole argument presented by Battle Born in support of such relief is the contractual exception that such damages are available in the event of fraud, gross negligence or willful misconduct. (Docket No. 31). However, in light of the Court's finding that the fraud claims are subject to dismissal for failure to state a plausible claim for relief, the Court holds that the more than $5 million in consequential damages/lost profits claimed by Battle Born arising from the failed helicopter deal with Lebanon are unavailable to remedy a breach of the Vendor Agreement. Accordingly, Dick's motion to dismiss the claim for consequential damages/lost profits is granted.

    C. *Leave to Amend*

"Plaintiffs in ordinary civil litigation ... must take affirmative steps to obtain amendment in the face of dismissal." *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017). To this end, it is a long-standing rule in the Third Circuit that "to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment

would be futile." *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). As Battle Born has not presented the Court with a proposed amended pleading, the Court declines to *sua sponte* extend it the opportunity to submit a Second Amended Complaint. *See Garza v. Citigroup Inc.*, 724 F. App'x. 95, 101, 2018 WL 678140, *4 (3d Cir. 2018) ("Our precedent is clear that district courts act within their discretion when they reject undeveloped requests for leave to amend that ... are unaccompanied by a proposed amended pleading. For that reason alone, the District Court did not abuse its discretion when it refused to grant leave to amend before judgment..."). The Court further finds that leave to amend should be denied as any amendment would be futile given the Court's analysis of defenses to the tort and damages claims, as set forth above. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Futility" in this context "means that the complaint, as amended, would fail to state a claim..."). Therefore, leave to amend a second time is denied.

    *D. Motion to Strike*

Finally, Dick's moves to strike certain paragraphs in the Second Amended Complaint which form the allegations supporting the now dismissed tort claims pursuant to Rule 12(f). (Docket No. 27; 34). Battle Born responds that the allegations should not be stricken. (Docket No. 31). As this Court has held, Rule 12(f) "[m]otions to strike are disfavored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, Civ. No. 09–290, 2011 WL 1044652, at *1 (W.D.Pa. Mar.18, 2011) (citations and quotations omitted). Here, the allegations are clearly pertinent to the tort claims and the mere fact that those claims were dismissed does not justify striking the paragraphs from the First Amended Complaint. To the contrary, the allegations are now essentially moot given the

dismissal of Counts II, III, and IV and the consequential damages allegations at Count I.  Therefore, Dick's motion to strike is denied.

V.     CONCLUSION

Based on the foregoing, Dick's motion to dismiss is granted and its motion to strike is denied.  An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated: May 3, 2019

cc/ecf: All counsel of record.